IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MH OUTDOOR MEDIA, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-14-898 |
| | § | |
| AMERICAN OUTDOOR ADVERTISING, | § | |
| LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending is Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, Motion to Transfer for Improper Venue Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) (Document No. 3).[1]  After carefully considering the motion, response, and applicable law, and having heard the arguments of counsel at the Rule 16 Scheduling Conference, the Court concludes that the case should be dismissed for lack of personal jurisdiction.[2]

---

[1] After Defendant filed its Motion to Dismiss and Plaintiff responded, the Plaintiff filed its First Amended Complaint. Document No. 12.  Plaintiff stipulated that Defendant's Motion to Dismiss may be deemed to be addressed to Plaintiff's First Amended Complaint.  Document No. 14.  *See also* Document No. 15 (Order granting leave to file Plaintiff's First Amended Complaint and noting Plaintiff's stipulation).

[2] Also pending is Plaintiff's opposed Motion for Leave to File Second Amended Complaint (Document No. 22).  The Court by Order dated June 17, 2014, granted leave to Plaintiff to file its First Amended Complaint.  Two months later, and about six months after filing its Original Petition, Plaintiff moved to file a Second Amended Complaint, which adds a new claim for fraudulent

I.  <u>Background</u>

Plaintiff MH Outdoor Media, LLC ("Plaintiff") is a Texas business that owns and operates billboards in five states, including Texas and Tennessee.[3]  Defendant American Outdoor Advertising, LLC ("Defendant") is a Georgia business that owns and

_____

inducement.  At the Court's August 29th scheduling conference, Plaintiff's highly respected and experienced counsel--whose website states is a nationally recognized expert in the representation of the outdoor advertising and sign industries who has handled numerous trials and appeals in state and federal courts--was unable convincingly to explain how a fraudulent inducement claim could have escaped his and his client's notice for half a year during a careful investigation and the drafting and filing of both an Original Petition and four months later a First Amended Complaint. Defendant objects to Plaintiff's motion for several reasons, including that it would be futile, which is probably so.  Moreover, the oddity of a fraud claim being urged at this late date, when no showing of personal jurisdiction has been made, invites disquiet as to whether it could be intended to bolster Plaintiff's personal jurisdiction argument.

Regardless, Plaintiff's proposed Second Amended Complaint would not confer personal jurisdiction over Defendant because it does not allege specific facts supporting an inference of fraudulent intent--which is necessary to state a valid claim for fraud--instead alleging merely that "[w]hen [Defendant] made the representations in the spreadsheet it either knew the representations were false or made the representations recklessly, as a positive assertion and without knowledge of the truth." Document No. 21 ¶ 6.  *See* <u>Dorsey v. Portfolio Equities, Inc.</u>, 540 F.3d 333, 339 (5th Cir. 2008) ("Although Rule 9(b) expressly allows scienter to be 'averred generally,' simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b). The plaintiffs must set forth *specific facts* supporting an inference of fraud.") (quotation marks and citations omitted) (emphasis in original).  But because the case must be dismissed for lack of personal jurisdiction, it is unnecessary to rule on Plaintiff's motion to amend a second time.

[3] Document No. 12 ¶ 5 (1st Am. Compl.).

operates billboards in Georgia, Tennessee, and Kentucky.[4]
Plaintiff alleges that on November 6, 2013, Plaintiff and Defendant
signed a Letter of Intent/Offer to Purchase in which Defendant
agreed to sell, and Plaintiff agreed to purchase, "36 units/149
faces consisting of digitals, tri-Vision, and static outdoor
advertising faces" in the Nashville, Tennessee area, at a price of
$5.25 million, with $10,000 in earnest money to be paid by
Plaintiff.[5]  Shortly thereafter, the parties signed a Purchase
Agreement, which provided for a 45-day due diligence review period,
at the end of which Plaintiff could reject or accept the
billboards.[6]

Plaintiff alleges that during its due diligence review, it
discovered inaccuracies in the descriptions in the Purchase
Agreement.[7] On December 19, 2013, Plaintiff sent to Defendant a
letter rejecting all of the billboards, except for four individual
billboards, which Plaintiff designated to purchase pursuant to
Paragraphs 2 and 11 of the Purchase Agreement for a total price of
$720,000.[8]  On December 27, Plaintiff informed Defendant that

_____

[4] Id.

[5] Id. ¶ 6; Document No. 12-1.

[6] Document No. 12-2.

[7] Document No. 12 ¶ 10.

[8] Id. ¶¶ 11-12; Document No. 12-3.  Paragraph 2 of the
Purchase Agreement provides:

closing would occur on December 30, at which time Plaintiff would pay Defendant $710,000 ($720,000 less the $10,000 earnest money already paid).[9]  Plaintiff alleges that on December 30, Defendant advised Plaintiff that it refused to proceed with the sale of the four billboards and that unless Plaintiff agreed to purchase all of the billboards, Defendant would terminate the agreement and retain the $10,000 earnest money.[10]

Plaintiff filed suit in state court, and Defendant timely removed based on diversity jurisdiction.[11]  Plaintiff's First Amended Complaint alleges breach of contract and seeks a declaratory judgment that Plaintiff is entitled to reject assets, that it has properly done so, and that it has the right to proceed

---

If [Plaintiff] rejects the Assets, this Agreement shall be null and void and neither party shall have any further rights, liabilities or obligations pursuant to this Agreement (except as otherwise specifically provided herein, including . . . the right to proceed with the purchase of non-rejected Assets pursuant to the allocated values listed in Exhibit A).

Document No. 12-2 ¶ 2.  Paragraph 11 provides that "[i]n the event [Plaintiff] was otherwise entitled to completely terminate this Agreement, it has the right but not the obligation in lieu thereof to proceed with the Closing and purchase only those Billboards and related Assets it specifies within its sole discretion" at the individual prices listed in the appendix.  Id. ¶ 11.

[9] Document No. 12 ¶ 13; Document No. 12-4.

[10] Document No. 12 ¶ 14.

[11] Document No. 1.

4

with the purchase of non-rejected assets.[12]  Defendant moves to dismiss for lack of personal jurisdiction, or, in the alternative, to transfer the case to the Middle District of Georgia.[13]

## II.  Legal Standard

A federal court may exercise personal jurisdiction over a nonresident defendant if:  (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) the exercise of such jurisdiction comports with due process under the United States Constitution.  *See* Electrosource, Inc. v. Horizon Battery Techs., Ltd., 176 F.3d 867, 871 (5th Cir. 1999). Because the Texas long-arm statute has been interpreted to extend as far as due process permits, the sole inquiry is whether the exercise of personal jurisdiction over a nonresident defendant comports with federal constitutional due process requirements.  Id.

This due process inquiry focuses upon whether the nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Int'l Shoe Co. v. Washington, 66 S. Ct. 154, 158 (1945).  "There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction."  Lewis

---

[12] Document No. 12.

[13] Document No. 3.

v. Fresne, 252 F.3d 352, 358 (5th Cir. 2001). Specific jurisdiction exists when the cause of action relates to or arises out of the defendant's contacts with the forum. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 104 S. Ct. 1868, 1872 n.8 (1984). Alternatively, general jurisdiction may be exercised over a defendant whose contacts with the forum are so substantial, systematic and continuous that the defendant is essentially at home in the state. See Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2853-54 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.").

When an evidentiary hearing on the question of personal jurisdiction is not conducted, the party seeking to establish jurisdiction bears the burden of presenting a *prima facie* case of personal jurisdiction. See Alpine View Co. v. Atlas Copco AB, 205 F.3d 208, 215 (5th Cir. 2000). Proof by a preponderance of the evidence is not required. Johnston v. Multidata Systems Int'l Corp., 523 F.3d 602, 609 (5th Cir. 2008). A plaintiff may present a *prima facie* case by producing admissible evidence which, if believed, would suffice to establish the existence of personal jurisdiction. See WNS, Inc. v. Farrow, 884 F.2d 200, 203 (5th Cir. 1989). Uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in

6

the parties' affidavits and other documentation must be construed
in the plaintiff's favor.  *See* Alpine View, 205 F.3d at 215.

## III.  Analysis

The undisputed evidence establishes that Defendant owns no
assets in Texas and has no office or employees in Texas, that no
representative of Defendant has ever traveled to Texas for any
purpose associated with the Defendant's business, and that the
parties' initial contract was formed when Defendant signed in
Georgia a Letter of Intent/Offer to Purchase which Plaintiff had
signed and sent to Defendant in Georgia.[14]  Plaintiff argues that
Defendant is nevertheless subject to specific jurisdiction in Texas
because it "purposefully availed itself of the privilege of
conducting activities in Texas when it sought out a Texas buyer,
delivered to Texas financial information and data required for the
due diligence phase of the agreement, and agreed to close in Texas
a sale of its assets to a Texas company."[15]

---

[14] *See* Document No. 3-3 ¶¶ 16-17, 21-22, 31, 34 (Aff. of Ricky
Chastain); Document No. 3-4 ¶¶ 16-17, 21-22, 31, 34 (Aff. of Marty
Williamson).

[15] Document No. 8 at 1-2.  Plaintiff does not argue that
Defendant is subject to general jurisdiction, and nothing in the
record indicates that Defendant is "essentially at home" in Texas.
*See* Daimler AG v. Bauman, 134 S. Ct. 746, 761 (2014) ("[T]he
inquiry under Goodyear is not whether a foreign corporation's
in-forum contacts can be said to be in some sense 'continuous and
systematic,' it is whether that corporation's 'affiliations with
the State are so 'continuous and systematic' as to render [it]
essentially at home in the forum State.'") (explaining that the

"[M]erely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction." Holt Oil & Gas Corp. v. Harvey, 801 F.2d 773, 778 (5th Cir. 1986); see also Patterson v. Dietze, Inc., 764 F.2d 1145, 1147 (5th Cir. 1985) (no personal jurisdiction over foreign defendant who contracted with Texas plaintiff where "[defendant's] contact with Texas rests on nothing but 'the mere fortuity that the plaintiff happens to be a resident of the forum'").

Defendant produces affidavit testimony that it was contacted by Max Drachman ("Drachman"), an Arizona-based broker representing Plaintiff, to inquire about purchasing billboards in the Nashville area; that Defendant did not advertise the sale of its billboards in Texas and had no particular interest in locating a buyer in Texas; and that "[t]he only reason that [Defendant] entered into a contract with a Texas limited liability company is because that happens to be the location of Plaintiff as buyer."[16]   Plaintiff argues that these statements are contradicted by the affidavits of Drachman and Steven Fretty, which Plaintiff contends establish that Defendant "engaged two different brokers/consultants" to negotiate separate deals with two potential purchasers for the same assets in

---

place of incorporation and principal place of business are the paradigmatic bases for general jurisdiction for a corporation). Defendant is therefore not subject to general jurisdiction in Texas.

[16] Document No. 3-3 ¶¶ 9-12, 32-33; Document No. 3-4 ¶¶ 9-12, 32-33.

order to play them off against each other, and that "Defendant targeted a Texas company as a known potential buyer to create a bidding war."[17]  Plaintiff's evidence--which is accepted as true in evaluating personal jurisdiction--states that Drachman repre-sented Defendant rather than Plaintiff.[18]  However, the fact that Defendant acted to create a bidding war does not contradict Defendant's evidence that it was indifferent to the location of its buyer, nor does Plaintiff produce any evidence that Defendant, rather than Drachman, identified Plaintiff as a potential buyer.[19] Accordingly, Plaintiff has not shown that Defendant's contact with Texas rests on more than "the mere fortuity that the plaintiff happens to be a resident of the forum." Patterson, 764 F.2d at 1147 ("The purposeful availment of the privilege of conducting activities within the forum state required by the due process clause cannot be inferred from such a 'mere fortuity.'") (citations omitted).

----

[17] Document No. 8 at 2-3. *See also* Document No. 8-1 (Aff. of Max Drachman); Document No. 8-2 (Aff. of Steven Fretty).

[18] *See* Document No. 8-1 ¶ 3 ("In the spring of 2013 I was in contact with Marty Williamson, president of [Defendant].  Mr. Williamson let me know that he thought it might be a good time to sell his company, and asked me some questions about possibly representing him. . . . In mid-August, 2013, when I sent [Defendant's] lease and revenue information to [Plaintiff], I was acting as the seller's broker.").

[19] Drachman's affidavit merely states that "I was to broker a sale to [Plaintiff]." Id.

Plaintiff also produces affidavit testimony that as part of Plaintiff's due diligence review, Defendant sent to Plaintiff in Texas "more than five electronic mail communications with attached spreadsheets, schedules, photos, maps, and other information," and that Defendant's representative talked on the phone with Plaintiff's employee in Texas.[20]   However, "the exchange of communications between Texas and [Georgia] in the course of developing and carrying out the contract was in itself also insufficient to constitute purposeful availment of the benefits and protections of Texas law" sufficient to establish personal jurisdiction because, like the contract itself, "[t]hese communications to Texas rested on nothing but 'the mere fortuity that [plaintiff] happens to be a resident of the forum.'"   Holt, 801 F.2d at 778 ("extensive telephonic and written communication" with Texas corporation insufficient to establish specific jurisdiction); see also Freudensprung v. Offshore Technical Servs., Inc., 379 F.3d 327, 344 (5th Cir. 2004) ("[T]his Court has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support

---

[20] Document No. 8-4 ¶ 4 (Aff. of Blake Randolph).

the exercise of specific personal jurisdiction over the nonresident defendant.").

Finally, Plaintiff argues that specific personal jurisdiction is established because the parties' Purchase Agreement specifies that the closing will take place at Plaintiff's office in Houston Texas "or as otherwise agreed by the parties."[21] Plaintiff relies on its November 8, 2013 letter to Defendant, which states that "[t]he Closing is scheduled for December 30, 2013 at 1:00 p.m. at American Title Company, 2000 Bering Dr., Suite 1000, Houston, Texas 77057."[22] However, the letter also states that "[t]here is no requirement, however, to personally attend the Closing," and explains that Defendant may send by mail and email the required documents transferring title to Plaintiff.[23] Plaintiff cites to a single state court decision, GJP, Inc. v. Ghosh, 251 S.W.3d 854 (Tex. App.-Austin 2008, no pet.), for the proposition that "[Defendant's] agreement to undertake these acts in Texas and accept payment in Texas is sufficient to support personal

---

[21] Document No. 8 at 4-5; Document No. 12-2 ¶ 5.

[22] Document No. 8-3 at 29 of 31.

[23] Id. at 30 of 31.  *See also* Document No. 3-3 ¶¶ 27-29 ("It was anticipated by Plaintiff and [Defendant] that no physical closing of the sale would take place. . . . It was never contemplated by Plaintiff or American that anyone on behalf of [Defendant] would travel to Texas to attend a closing for the sale."); Document No. 3-4 ¶¶ 27-29 (same).

jurisdiction."[24]   However, in <u>Ghosh</u>, the court found personal jurisdiction where the defendants had personally traveled to Texas to deliver a car and pick up a $35,000 check, thereby closing the deal.   <u>Id.</u>   Here, in contrast, no closing ever occurred, and even if the deal had closed, there is no evidence that Defendant would have entered Texas.

Accordingly, Plaintiffs have not made a *prima facie* case that this Court has personal jurisdiction over Defendant, and Plaintiff's case is dismissed without prejudice.

### IV.   Order

For the foregoing reasons, it is

ORDERED that Defendant American Outdoor Advertising, LLC's Motion to Dismiss for Lack of Personal Jurisdiction (Document No. 3) is GRANTED, and Plaintiff MH Outdoor Media, LLC's suit is DISMISSED without prejudice for lack of personal jurisdiction.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, this *10th* day of September, 2014.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

---

[24] Document No. 8 at 4.